*E-filed on 11/21/07*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALIREZA SHIRVANI MAHDAVI,<br><br>    Plaintiff,<br>  v.<br><br>ALBERTO GONZALES, United States Attorney General, U.S. Department of Justice; MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; EMILIO T. GONZALEZ, Director of United States Citizenship and Immigration Services; CHRISTINA POULOS, Director of the California Service Center, United States Citizenship and Immigration Services; ROBERT S. MUELLER III, Director of the Federal Bureau of Investigation,<br><br>    Defendants. | No. C07-02193 HRL<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Docket Nos. 16 and 17 |

This matter is before the court on the parties' cross-motions for summary judgment, deemed submitted without oral argument.[1] Upon consideration of the moving and responding papers, the court grants in part and denies in part both motions.

**I. BACKGROUND**

The following facts are not materially disputed:

Plaintiff Alireza Shirvani Mahdavi, an Iranian citizen, sues to compel the processing of his employment-based I-485 application for adjustment of status to lawful permanent resident.

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that this matter may be heard and finally adjudicated by the undersigned.

1     On May 26, 2004, plaintiff filed his I-485 application at the California Service Center of the
2 United States Citizenship and Immigration Services (USCIS).  The name check request was
3 submitted to the Federal Bureau of Investigation (FBI) on June 3, 2004.  (Heinauer Decl., ¶ 15).
4 The FBI received those requests on or about June 7, 2004.  (Cannon Decl., ¶¶ 22).  On March 2,
5 2007, the application was transferred to the Nebraska Service Center, where it remains pending.
6 (Heinauer Decl., ¶ 3).  Plaintiff's application for adjustment of status is ready to be adjudicated
7 except for his pending background and security check.  (Heinauer Decl., ¶ 7).

8     A name check is one of several forms of security and background checks that must be
9 completed when an alien applies for adjustment of status.  (*See* Heinauer Decl., ¶ 9).  According to
10 Michael Cannon, Section Chief of the National Name Check Program Section (NNPS) at the FBI's
11 headquarters, a name check proceeds in several stages.  (Cannon Decl., ¶¶ 11-15).  Historically,
12 during the initial stage (an electronic database search), 68 percent of the name checks submitted by
13 USCIS are returned within 48-72 hours with "No Record."  (*Id*., ¶ 13). This means "that the FBI's
14 Universal Index database contains no identifiable information regarding a particular individual."
15 (*Id*.).  The remaining name checks proceed to the second processing stage; and, typically, 22
16 percent of the USCIS requests are returned after this manual name search within 30-60 days as
17 having "No Record."  (*Id*., ¶ 14).  Thus, by the end of the second stage, 90 percent of name checks
18 are returned with no identifiable information for a particular individual.  (*Id*.).  For the remaining 10
19 percent, FBI records must be manually retrieved and reviewed, unless the relevant records have
20 been electronically uploaded into the FBI's electronic record-keeping system.  (*Id*.).  In the end,
21 "[l]ess than one percent of USCIS's requests are identified with a file containing possible
22 derogatory information."  (*Id*., ¶ 15).  Name check requests are generally handled on a "first-in,
23 first-out" basis unless the USCIS directs the FBI to expedite a name check.  (*Id*., ¶ 19).

24    Plaintiff claims that defendants have unreasonably delayed the adjudication of his
25 application, which has been now been pending for nearly three and a half years.

26
27
28

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A genuine issue of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248-49.

The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses.  *See* FED. R. CIV. P. 56(e); *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102.  The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.  *See id.*

## III. DISCUSSION

Plaintiff seeks relief pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*. and the mandamus statute, 28 U.S.C. § 1362.  Mahdavi requests that defendants be compelled to expeditiously complete adjudication of his I-485 application, specifically asking for adjudication within sixty days of the court's order.  Defendants contend that this court lacks jurisdiction to compel the FBI to complete plaintiff's name checks more expeditiously.  Alternatively, defendants argue that any delay in the processing of plaintiff's application has not been unreasonable.  Finally, defendants contend that this court does not have jurisdiction over some of the named defendants.

**A.     Mandamus and the APA**

   **1.     Jurisdiction to Adjudicate Claims**

Under the APA, "[t]o the extent necessary to decision and when presented, the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1). Additionally, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." *Id.*, § 555(b). To invoke jurisdiction under the APA, plaintiff must show that defendants (1) had a nondiscretionary duty to act and (2) unreasonably delayed in acting on that duty. *See Gelfer v. Chertoff*, C06-06724, 2007 WL 902382, *1 (N.D. Cal., Mar. 22, 2007) (*citing Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-65 (2004)).

Under the mandamus statute, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. This relief is "available to compel a federal official to perform a duty if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1998).

Although the mandatory injunction under the APA is technically distinct from a writ of mandamus, the relief plaintiff seeks is identical under either statute. *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). Thus, whether the court proceeds under one or the other in the instant case is not of practical significance. *See Gelfer*, No. C06-06724, 2007 WL 902382 at *3. For purposes of this case, the court will proceed under the APA framework.

Defendants challenge this court's jurisdiction to adjudicate claims concerning the pace at which I-485 applications are processed. However, courts in this district have repeatedly concluded that the USCIS has a mandatory duty to process applications within a reasonable time and, further, that jurisdiction lies to hear an allegation that the determination of an application has been unlawfully withheld. *See, e.g., Gelfer*, No. C06-06724, 2007 WL 902382 at *2; *Razaq v. Poulos*, No. C06-02461, 2007 WL 61884, *3 (N.D. Cal., Jan. 8, 2007); *Singh v. Still*, 470 F. Supp.2d 1064,

4

1066-67 (N.D. Cal. 2007); *Aboushan v. Mueller*, No. C06-01280, 2006 WL 3041086, *2 (N.D. Cal., Oct. 24, 2006). This court agrees.

Accordingly, the crux of the present dispute is whether any delay in the government's processing of plaintiff's application has been unreasonable.

### 2. Reasonableness of the Delay: The "TRAC" Factors

The Ninth Circuit has adopted a six-factor test – the so-called "TRAC" factors – to determine when agency delay is unreasonable:

(1) the time agencies take to make decisions must be governed by a 'rule of reason';
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001); *Telecomms. Research & Action Center ("TRAC") v. Fed. Communications Comm'n*, 750 F.2d 70, 80 (D.C.Cir. 1984).

#### a. First and Second Factors

The first factor requires an agency to use a "rule of reason" in its decision-making. The second factor provides that where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.

Plaintiff suggests that the fact that his application has been pending for over three years is patently unreasonable. He argues that Congress intended applications to be adjudicated within 180 days. *See* 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . .."). That 180-day timetable may provide some guidance here, although defendants correctly note that the "sense of Congress" expressed in the INA does not necessarily carry the force of law. *See Yang v. California Dep't of Social Servs.*, 183 F.3d 953, 958-59 (9th Cir. 1999).

1  Defendants argue that there is no statutory deadline by which applications must be adjudicated and
2  that, in any event, the "first-in, first-served" protocol must be given deference.

3  It is true that Congress has not established a mandatory timeframe for the USCIS to
4  adjudicate applications. Moreover, "[t]he passage of time alone is rarely enough to justify a court's
5  intervention in the administrative process, especially since administrative efficiency is not a subject
6  particularly suited to judicial evaluation." *Singh v. Ilchert*, 784 F. Supp. 759, 764-65 (N.D. Cal.
7  1992) (internal citations omitted). However, the court also recognizes that there is no precise
8  formula for determining whether there has been an unreasonable delay. Instead, "[w]hat constitutes
9  an unreasonable delay in the context of immigration applications depends to a great extent on the
10 facts of the particular case." *Yu v. Brown*, 36 F. Supp.2d 922, 934 (D.N.M. 1999).

11 Absent special circumstances, it seems that the vast majority of applications are processed
12 within about six months. (*See* Cannon Decl., ¶¶ 13-14; Heinauer Decl., attached fact sheet at p. 2).
13 While defendants have submitted some evidence generally indicating that plaintiff's application is
14 being processed in accordance with the government's "standard procedures" and "normal protocol,"
15 (*see* Cannon Decl., ¶ 22, Heinauer Decl. ¶ 19), the record before the court indicates that plaintiff
16 has waited his turn for three and half years while untold numbers of later-filed applications have
17 been processed. According to the USCIS website, as of March 2007 (a month before the instant
18 lawsuit was filed), the government was processing I-485 applications received as of August 21,
19 2006 – i.e., those filed over two years *after* plaintiff's application. (*See* Complaint, Ex. 10). In the
20 meantime, Mahdavi was first fingerprinted in July 2004 – and then apparently had to be re-printed
21 in October 2005 and again in March 2007 because "[t]he fingerprint check must be less than fifteen
22 months old at the time any application or petition is adjudicated." (Heinauer Decl., ¶ 13).

23 The record before the court suggests that processing times for applications will vary because
24 some applications may require greater scrutiny than others. (*See, e.g.,* Cannon Decl., ¶ 37). Here,
25 however, there is no evidence explaining why the FBI needed several years to process Mahdavi's
26 name check in particular. Furthermore, in this case, the U.S. Department of Labor has certified that
27 there are not sufficient U.S. workers available to fill the position on which plaintiff's application is
28 based. (Heinauer Decl., ¶¶ 4, 5).

6

### b. Third and Fifth Factors

The third TRAC factor provides that delays affecting human health and welfare are less tolerable than those concerning only economic interests. The fifth factor requires the court to consider the nature and extent of any interests prejudiced by the delay.

Here, the nature of the interests at stake are more than merely economic. There appears to be no material dispute that plaintiff cannot work or travel without restriction. Plaintiff also alleges that the delay in the processing of his I-485 application has been a setback to his ultimate goal of becoming a United States citizen. (Plaintiff's Mot. at 7-8). However, this court cannot assume that the government's decision on the pending application will be favorable to plaintiff. If the application is denied, the interest that will have been affected is plaintiff's interest in knowing sooner rather than later whether he may stay in this country. *See Razaq*, No. 06-02461, 2007 WL 61884 at *7.

As for the extent of the prejudice suffered, plaintiff asserts that he "suffer[s] from the day-to-day stress of not knowing whether she [sic] will be able to settle permanently in the United States or if she [sic] will be forced to return to Iran." (Plaintiff's Mot. at 8). However, plaintiff offers no evidence, by way of declaration or otherwise, substantiating these prejudice claims. The government, on the other hand, has submitted evidence indicating that plaintiff currently holds employment authorization documents valid through February 6, 2008. (Heinauer Decl., ¶ 18). Plaintiff has applied for travel documents, but that application also remains pending. (*Id.*). Thus, the court finds that the interests at stake are important, but plaintiff's showing as to the extent of any prejudice is nonetheless underwhelming.

### c. Fourth and Sixth Factors

The fourth TRAC factor directs the court to consider the effect of expediting delayed action on agency activities of a higher or competing priority. However, the sixth factor provides that no finding of impropriety is required before finding that agency action has been unreasonably delayed. Here, defendants assert that, since September 11, 2001, the FBI's workload has increased and it has had to complete security checks more carefully and thoroughly. As such, defendants contend that any delay in the adjudication of plaintiff's application is justified in view of the government's

7

1  paramount interest in securing the nation's safety.  Conversely, the government argues that
2  permitting plaintiff to jump ahead in the "first-in, first-served" process will only delay other
3  applications and intrude upon the government's efforts to safeguard national security.

4  The uncontroverted evidence submitted by the government indicates that the administrative
5  burden of processing name checks is considerable.  The FBI is responsible for handling name
6  checks for a number of government agencies, including USCIS.  (Cannon Decl., ¶ 4).  Before
7  September 11, 2001, the FBI processed approximately 2.5 million name check requests per year.
8  (*Id*., ¶ 16).  For the fiscal year 2006, the FBI processed over 3.4 million name checks.  (*Id*.).  Since
9  September 11, 2001, the FBI reportedly has received "millions" of name check requests from
10 USCIS.  (*See id*., ¶ 18; Heinauer Decl., ¶ 15).  This court appreciates the administrative burden
11 faced by defendants, but it does not find that assertions of overwork alone are sufficient to justify
12 substantial delays.  *See Yu*, 36 F. Supp.2d at 934 ("[D]elays of [a significant] magnitude,
13 particularly when they occur over uncomplicated matters of great importance to the individuals
14 involved, may not be justified merely by assertions of overwork.") (citations omitted).

15 "Undoubtedly, national security must be considered a competing priority of the highest
16 order.  However, the mere invocation of national security is not enough to render agency delay
17 reasonable per se."  *Singh*, 470 F. Supp.2d at 1069.  Here, there is no particularized showing that
18 plaintiff's application is especially complex or presents any national security concerns.  If there
19 were, the fact that plaintiff lives and works in this country suggests that national security interests
20 require that his background check be completed sooner rather than later.  *See Toor v. Still*, 2007
21 WL 2028407, No. C07-0645, *2 (N.D. Cal., Jul. 10, 2007) ("[C]onsidering the fact that most
22 applicants will be physically present in the United States, [allowing inaction] seems antithetical to
23 the national security interests."); *see also Dong v. Chertoff*, 2007 WL 2601107, No. C07-0266, *10
24 (N.D. Cal., Sept. 6, 2007) (same).  Additionally, if status were to be adjusted in error, the
25 government may rescind the status and initial removal proceedings.  *See* 8 U.S.C. §§ 1227(a)(1)(A),
26 1256(a); *Singh*, 470 F. Supp.2d at 1070.  In any event, it cannot be said that plaintiff will gain an
27 unfair advantage by having his application processed expeditiously, given the reality that many
28 applicants were actually second-in-line (compared to plaintiff) but "first-served."

8

### 3. Conclusion

Thus, while the court is not overwhelmed by plaintiff's arguments as to the extent of prejudice suffered, it does conclude that he has important non-economic interests at stake. His application has been pending for three and a half years, and nothing in the record demonstrates that the delay has been reasonable as a matter of law.

### B. Jurisdiction over the Named Defendants

Defendants contend that because the Department of Homeland Security (DHS) is the agency responsible for implementing the Immigration and Nationality Act (INA), 8 U.S.C. § 1255, that Michael Chertoff (in his official capacity as Secretary of DHS) is the only relevant defendant. *See* 6 U.S.C. §§ 271(b), 557. Therefore, they seek dismissal of all other defendants.

Plaintiff does not object to the dismissal of defendants Alberto Gonzales (United State Attorney General) [2] and Robert S. Mueller III (Director of the FBI). He contends, however, that defendants Emilio Gonzalez and Christina Poulos (Directors of USCIS centers) should remain. In support, Mahdavi points to the text of the APA which provides that an action "may be brought against the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. § 703. Defendants Gonzalez and Poulos are high-level directors within the USCIS, a division of DHS. 6 U.S.C. § 271(b), 557. As such, plaintiff contends that they have been granted the authority to approve or deny the I-485 application and should remain parties to this action. See 8 U.S.C. § 1103(a); 8 C.F.R. § 2.1; and 8 C.F.R § 100.2(a). One of the cases cited by defendants in their brief, *Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 WL 2070325 (N.D. Cal.), agreed with plaintiff on this point and permitted Gonzalez and Poulos to remain as defendants.

Accordingly, defendants' motion for summary judgment as to Alberto Gonzales and Robert S. Mueller III is granted and plaintiff's motion is denied. This court has jurisdiction over the remaining defendants to require either DHS or USCIS to process Mahdavi's application within a reasonable amount of time. *See Konchitsky*, 2007 WL 2070325, *6-*7.

---

[2] Plaintiff actually states that he does not object to the dismissal of Peter D. Keisler, who was at that time, Acting United States Attorney General.

9

## IV.  ORDER

Based on the foregoing, as to defendants Alberto Gonzales and Robert Mueller III, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.  Defendants' motion is otherwise denied, and plaintiff's motion is otherwise granted. **Defendants shall adjudicate plaintiff's I-485 application by January 21, 2008**.  By that date, defendants shall file an affidavit with the court demonstrating compliance.  This case shall remain open pending receipt of defendants' affidavit.

**IT IS SO ORDERED.**

Dated: 11/21/07



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:07-cv-2193 Notice has been electronically mailed to:**

Justin Fok jfok@jclawoffice.com

Melanie Lea Proctor Melanie.Proctor@usdoj.gov, tiffani.chiu@usdoj.gov

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

Dated: 11/21/07

/s/  KRO

Chambers of Magistrate Judge Howard R. Lloyd